IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MELLISSA A. NICKAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV88 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Mellissa Nickal ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on January 27, 2012 and September 21, 2012, respectively, alleging a disability onset date of July 4, 2010.[2] (Tr. at 23, 161-69, 173, 178.)[3] Her applications were denied initially (Tr. at 87-96, 109-12) and upon reconsideration (Tr. at 97-108, 114-17). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 118-19.) Plaintiff attended the subsequent hearing on April 14, 2014, along with her attorney and an impartial vocational expert. (Tr. at 23.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through July 18, 2014, the date of her decision. (Tr. at 38-39.) On December 6, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144

---

[2] Plaintiff's Application for Supplemental Security Income Benefits does not appear in the administrative record. However, it appears that Plaintiff's SSI claim was joined with the DIB claim at the hearing level. See SSA's Program Operations Manual System (POMS), DI 51501.001 Procedural Change for Subsequent Disability Applications Effective July 28, 2011, https://secure.ssa.gov/poms.nsf/lnx/0451501001; SSA's Program Operations Manual System (POMS), DI 12045.015 Claims Under Different Titles—Common Issue at the ALJ Hearing Level, https://secure.ssa.gov/poms.nsf/lnx/0412045015. The ALJ's decision clearly addresses both applications. (Tr. at 23.)

[3] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

(4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ."  Hancock, 667 F.3d at 472 (internal brackets omitted).  "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

3

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

III. <u>DISCUSSION</u>

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> status post right-sided L5-S1 laminectomy, lumbar radiculopathy and myofascial pain, mild degenerative osteoarthritis of the sacroiliac joints, pubic symphysis, and obesity.

(Tr. at 25.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 31.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform

> sedentary work . . . [but] [s]he requires the option to stand for a couple of minutes, a couple times per hour, she can occasionally push/pull, and can occasionally climb ramps or stairs, balance, kneel, crouch or crawl[,] [s]he can frequently stoop and cannot climb ladders, ropes or scaffolds, and she requires the use of a cane to ambulate when outside.

(Tr. at 31.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of her past relevant work. (Tr. at 37.) However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the national economy. (Tr. at 37-38.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 38.)

On appeal, Plaintiff submitted a physical RFC questionnaire completed by Dr. Amy Woolwine on September 16, 2014, approximately two months after the ALJ's decision. The Appeals Council made this opinion evidence part of the record, but ultimately "concluded that

6

the additional evidence does not provide a basis for changing the [ALJ's] decision." (Tr. at 2, 5.) Plaintiff now challenges the Appeals Council's decision, arguing that Dr. Woolwine's opinion fills evidentiary gaps and contradicts the findings of the ALJ, thereby rendering the ALJ's decision unsupported by substantial evidence. (Pl.'s Br. [Doc. #11] at 3-6.) In addition, Plaintiff raises challenges based on the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Specifically, Plaintiff argues that the ALJ, without sufficient explanation, omitted RFC limitations addressing both (1) Plaintiff's alleged handling and fingering limitations and (2) her mild limitation in concentration, persistence, or pace. (Pl.'s Br. at 6-13.) Plaintiff also maintains that the ALJ failed to "give legally sufficient reasons supported by substantial evidence" in finding Plaintiff's testimony less than credible. (Id. at 13-17.)

A. Appeals Council Review of New Evidence

In cases where the Appeals Council has considered new evidence submitted by the claimant but then denied review, on appeal the Court must " 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec., Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). However, "the regulations do not require the Appeals Council to articulate its rationale for denying a request for review." Meyer, 662 F.3d at 705–706. In this regard, the Fourth Circuit has held that the "lack of such additional fact finding does not render judicial review 'impossible'—as long as the record provides 'an adequate explanation of the Commissioner's decision.' " Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (internal brackets omitted)). Accordingly, the Fourth Circuit has affirmed in cases where, after reviewing new evidence,

7

substantial evidence supported the ALJ's findings. Meyer, 662 F.3d at 707 (citing Smith v. Chater, 99 F.3d 635, 638–39 (4th Cir. 1996)). "Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record, [the Fourth Circuit has] reversed the ALJ's decision and held that the ALJ's denial of benefits was 'not supported by substantial evidence.' " Meyer, 662 F.3d at 707 (citing Wilkins, 953 F.2d at 96). Where new evidence competes with the evidence underlying an ALJ's decision, a situation arises in which "no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707. Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the Court "must remand the case for further fact finding" in such an instance. Id. Thus, remand is appropriate if the Appeals Council accepts new evidence that is "conflicting" or "presents material competing testimony" or is "contradictory" or "calls into doubt any decision grounded in the prior medical reports." Gainforth v. Colvin, No. 2:15-CV-205, 2016 WL 3636840, at *7 (E.D. Va. May 9, 2016).

In this case, Plaintiff submitted a form opinion statement completed by Dr. Woolwine and entitled "Physical Residual Function Capacity Questionnaire for the Period Prior to July 18, 2014." (Tr. at 586-90.) Notably, July 18, 2014 was the date of the ALJ's decision. On the form, Dr. Woolwine indicated that she began treating Plaintiff on June 17, 2014, approximately one month prior to the date of the ALJ's decision, and had seen her monthly during the 4-month period from June 17, 2014 to September 16, 2014. (Tr. at 586.) In addition, Dr. Woolwine identified herself as a physician with Lakeside Primary Care, which appears to have been Plaintiff's primary care practice since January 2013, although Plaintiff was previously

8

treated by providers other than Dr. Woolwine (Tr. at 473.) On the form, Dr. Woolwine identifies Plaintiff's diagnoses as "fibromyalgia, arthritis, chronic back pain with neuropathic pain," further affected by depression and anxiety (Tr. at 586, 587.) These are the same impairments considered by the ALJ. Dr. Woolwine describes Plaintiff's symptoms as "pain – diffuse myalgias, worse with movement, low back & pelvic pain, neuropathy, dizziness, unsteadiness, severe chronic fatigue." (Tr. at 586.) Dr. Woolwine opined that Plaintiff was incapable of even a "low stress" job, that she could sit no more than 30 minutes at one time and only about 2 hours a day, and that she could stand 10 minutes at a time and less than 2 hours total in an 8 hour day. Dr. Woolwine also opined that Plaintiff would need to take 6-8 unscheduled breaks during the day, that she could never lift and carry any weight, and that she would likely be absent from work more than four days per month. (Tr. at 588-89.) In addition, Dr. Woolwine opined that Plaintiff could use her right hand and fingers for grasping and fine manipulation "0%" of the day, and could use her left hand and fingers 20% of the day. (Tr. at 589.)

In this case, it appears that Dr. Woolwine's opinion fills in evidentiary gaps, conflicts with evidence relied upon by the ALJ, and is supported by evidence in the record, including a Functional Capacity Evaluation, which found that Plaintiff was incapable of sustaining even sedentary work for an 8-hour day for 40 hours per week. Specifically, the Functional Capacity Evaluation involved testing over a 5 hour period and concluded that although Plaintiff "demonstrates sitting ability sufficient for Sedentary work, her performance on the remainder of the test indicates that she is unable to sustain Sedentary work for 8 hours due to fatigue, as measured by changes in heart rate and performance." (Tr. at 534.) As noted by Plaintiff, in

9

rejecting the results of the Functional Capacity Evaluation, the ALJ specifically relied upon the fact that "none of the claimant's treating or examining physicians have specifically indicated that the claimant is disabled or unable to perform all work activity." (Tr. at 36.) Thus, the ALJ specifically relied upon the lack of a treating or examining physician opinion. No consultative examination was conducted, and no other opinion evidence was weighed or relied upon by the ALJ in formulating the RFC. Thus, Dr. Woolwine's opinion conflicts with the ALJ's conclusion, corroborates the Functional Capacity Evaluation, and fills in the evidentiary gap identified by the ALJ.

The Commissioner contends that remand is not required because there is no evidence that Dr. Woolwine is Plaintiff's treating physician. However, Dr. Woolwine's form itself reflects that she is part of Plaintiff's primary care practice and has been treating Plaintiff on a monthly basis beginning prior to the date of the ALJ's decision. The Commissioner also contends that Dr. Woolwine's opinion is not material to the determination because it relates to a later time after the date of the ALJ decision. However, the form specifically reflects that it relates to the period prior to July 18, 2014. Even more importantly, the Appeals Council did not reject the opinion on that basis. Instead, the Appeals Council accepted and considered the evidence, and the Court therefore considers Dr. Woolwine's opinion as part of the record as a whole. Similarly, to the extent the Commissioner contends that Dr. Woolwine's opinion is "extreme" or not supported by the record, the Commissioner is raising contentions that need to be reviewed and considered by the fact finder in the first instance. As noted above, the Fourth Circuit has made clear that where "no fact finder has made any findings as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting

evidence in the record," remand is appropriate because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." Meyer, 662 F.3d at 707.

B.   Mascio Issues

Having reached this conclusion, the Court need not address the remaining issues raised by Plaintiff. However, with respect to Plaintiff's Mascio claims, the Court does note that it appears that the ALJ failed to perform a function-by-function analysis of Plaintiff's hand impairment and the effect of that impairment on her ability to perform work-related activities, particularly handling and fingering. In considering when a function-by-function analysis should be required, the Fourth Circuit has rejected a *per se* rule, finding it "inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013).) However, the Fourth Circuit "agree[d] with the Second Circuit that '[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id.

Here, Plaintiff argues that the ALJ failed to properly consider and discuss evidence of her hand impairment in formulating the RFC. In particular, Plaintiff points to the Functional Capacity Evaluation performed on January 21, 2014, which recorded low percentile scores in both her manual and finger dexterity. The ALJ generally addressed the Functional Capacity Evaluation in her decision, as noted above, but the ALJ did not specifically address the test's dexterity results. Plaintiff also notes that the medical records reflect Plaintiff's ongoing treatment for hand pain. In reviewing the medical evidence, the ALJ noted that from April

12, 2010 through January 30, 2012, Plaintiff was treated at Arthritis and Osteoarthritis Consultants of Carolina for "complaints of joint pain, mainly involving the hand with significant pain involving the thumb." (Tr. at 26, 348-60.) Her physicians noted subjective tenderness in several of her hand and finger joints, and x-rays showed "mild degenerative changes involving the first carpometacarpal and hands bilaterally" (Tr. at 26, 33, 363). Plaintiff's treatment records from January 30, 2012 noted a positive rheumatoid factor, IgA, along with an elevated sedimentation rate of 27, and elevated C-reactive protein. (Tr. at 26, 33, 348.) Upon Plaintiff's subsequent referral to NorthEast Rheumatology, Plaintiff continued to report "difficulty extending her thumb, a lot of pain in her hand when she tried to write, and . . . dysfunction of the right hand with difficulty gripping." (Tr. at 26, 414, 415, 417.) Rheumatologist Heather Holden, M.D., noted that Plaintiff "had a functional somatic syndrome with features suggestive of fibromyalgia and significant arthralgias but no joint swelling or deformities consistent with an inflammatory arthritis." (Tr. at 26, 34, 416.) In 2013, Dr. Holden again stated, "I do not think that there is an underlying rheumatologic or neurologic condition that can specifically explain this. It makes me consider the possibility of a conversion disorder." (Tr. at 34, 549-50.) As noted by the ALJ, by the time of her hearing in 2014, Plaintiff still had "not had any specific diagnosis as to the problems related to her right arm and hand." (Tr. at 36.) However, it is not clear if the ALJ concluded that because Plaintiff had not received a specific diagnosis, her right arm and hand problems should be disregarded, or how the ALJ otherwise resolved this issue. Moreover, as part of step two of the sequential evaluation, the ALJ specifically found that Plaintiff "does have musculoskeletal issues in her back and <u>osteoarthritis of the sacroiliac joints and hands</u>." (Tr. at 27.) Yet despite

making this finding, the ALJ did not further address whether or how these impairments affected Plaintiff's ability to use her hands and fingers.

Notably, at the hearing, the ALJ asked the vocational expert about various hypothetical scenarios and specifically asked about the effect of limiting the hypothetical to "frequent handling and fingering with the right, dominant, upper extremity." (Tr. at. 79.) The vocational expert testified that such a limitation would rule out all of the sedentary jobs. (Tr. at 79-80.) Thus, based on the vocational expert's testimony, any limitation in Plaintiff's handling and fingering would preclude her from any of the sedentary positions otherwise within her RFC. The ALJ nevertheless failed to address why Plaintiff's hand impairment, which the ALJ had recognized as osteoarthritis of the hands in the discussion at step two, did not affect her handling and fingering. Thus, it appears that the ALJ failed to undertake the function-by-function analysis required by Mascio, and as noted in that case, '[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636.

Moreover, as noted above, Dr. Woolwine's subsequent opinion submitted to the Appeals Council specifically opines that Plaintiff could use her right hand and fingers for grasping and fine manipulation "0%" of the day, and could use her left hand and fingers 20% of the day. (Tr. at 589.) Thus, Dr. Woolwine's opinion also addresses gaps in the evidence regarding Plaintiff's handling and fingering limitations.

Thus, in light of the new evidence accepted by the Appeals Council that requires initial review and consideration by a fact finder, and in light of the ALJ's failure to perform a function

by function analysis with respect to Plaintiff's hand impairment, the Court concludes that remand is required in this case. As such, the Court need not reach the other issues raised by Plaintiff.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 11th day of August, 2017.

/s/ Joi Elizabeth Peake
United States Magistrate Judge